EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN M. ARKOW (Cal. Bar No. 143755)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-6975
    Facsimile:  (213) 894-6269
    E-mail:     steven.arkow@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-512-SJO |
|---|---|
|        Plaintiff, | PLEA AGREEMENT FOR DEFENDANT SHARON PATROW |
|        v. | |
| SHARON PATROW,<br>  aka "Sharon Garcia," | |
|        Defendant. | |

     1.   This constitutes the plea agreement between SHARON PATROW, also known as "Sharon Garcia" ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

     a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count thirteen of

the indictment in <u>United States v. Priscilla Villabroza</u>, CR 14-512-SJO, which count charges defendant with health care fraud, in violation of Title 18, United States Code, Section 1347.

  b.   Not contest facts agreed to in this agreement.

  c.   Abide by all agreements regarding sentencing contained in this agreement.

  d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

  e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

  f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

  g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

  h.   Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

  i.   Prior to the time of sentencing, file with the Internal Revenue Service accurate amended returns for the calendar years 2007 through 2013.

  3.   Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation, the United States Department of Health and Human Services -- Office of Inspector General, the Internal Revenue Service—Criminal Investigations, and, as directed by

2

1  the USAO, any other federal, state, local, or foreign prosecuting,

2  enforcement, administrative, or regulatory authority.   This

3  cooperation requires defendant to:

4          a.   Respond truthfully and completely to all questions

5  that may be put to defendant, whether in interviews, before a grand

6  jury, or at any trial or other court proceeding.

7          b.   Attend all meetings, grand jury sessions, trials or

8  other proceedings at which defendant's presence is requested by the

9  USAO or compelled by subpoena or court order.

10         c.   Produce voluntarily all documents, records, or other

11 tangible evidence relating to matters about which the USAO, or its

12 designee, inquires.

13    4.   For purposes of this agreement: (1) "Cooperation

14 Information" shall mean any statements made, or documents, records,

15 tangible evidence, or other information provided, by defendant

16 pursuant to defendant's cooperation under this agreement; and

17 (2) "Plea Information" shall mean any statements made by defendant,

18 under oath, at the guilty plea hearing and the agreed to factual

19 basis statement in this agreement.

20                    THE USAO'S OBLIGATIONS

21    5.   The USAO agrees to:

22         a.   Not contest facts agreed to in this agreement.

23         b.   Abide by all agreements regarding sentencing contained

24 in this agreement.

25         c.   At the time of sentencing, move to dismiss the

26 remaining counts of the indictment as against defendant.   Defendant

27 agrees, however, that at the time of sentencing the Court may

28 consider any dismissed charges in determining the applicable

                                3

1  Sentencing Guidelines range, the propriety and extent of any
2  departure from that range, and the sentence to be imposed.

3        d.    At the time of sentencing, provided that defendant
4  demonstrates an acceptance of responsibility for the offenses up to
5  and including the time of sentencing, recommend a two-level reduction
6  in the applicable Sentencing Guidelines offense level, pursuant to
7  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
8  additional one-level reduction if available under that section.

9        e.    At the time of sentencing, provided that defendant
10 complies with her obligations under paragraphs 2 and 3, recommend,
11 pursuant to the factors set forth in 18 U.S.C. § 3553(a), a downward
12 variance not to exceed three levels based on defendant's role as the
13 caregiver for her child with cerebral palsy.

14    6.    The USAO further agrees:

15       a.    Not to offer as evidence in its case-in-chief in the
16 above-captioned case or any other criminal prosecution that may be
17 brought against defendant by the USAO, or in connection with any
18 sentencing proceeding in any criminal case that may be brought
19 against defendant by the USAO, any Cooperation Information.
20 Defendant agrees, however, that the USAO may use both Cooperation
21 Information and Plea Information: (1) to obtain and pursue leads to
22 other evidence, which evidence may be used for any purpose, including
23 any criminal prosecution of defendant; (2) to cross-examine defendant
24 should defendant testify, or to rebut any evidence offered, or
25 argument or representation made, by defendant, defendant's counsel,
26 or a witness called by defendant in any trial, sentencing hearing, or
27 other court proceeding; and (3) in any criminal prosecution of
28 defendant for false statement, obstruction of justice, or perjury.

4

       b.    Not to use Cooperation Information against defendant
at sentencing for the purpose of determining the applicable guideline
range, including the appropriateness of an upward departure, or the
sentence to be imposed, and to recommend to the Court that
Cooperation Information not be used in determining the applicable
guideline range or the sentence to be imposed.  Defendant
understands, however, that Cooperation Information will be disclosed
to the probation office and the Court, and that the Court may use
Cooperation Information for the purposes set forth in U.S.S.G
§ 1B1.8(b) and for determining the sentence to be imposed.

       c.    In connection with defendant's sentencing, to bring to
the Court's attention the nature and extent of defendant's
cooperation.

       d.    If the USAO determines, in its exclusive judgment,
that defendant has both complied with defendant's obligations under
paragraphs 2 and 3 above and provided substantial assistance to law
enforcement in the prosecution or investigation of another
("substantial assistance"), to move the Court pursuant to U.S.S.G.
§ 5K1.1 to fix an offense level and corresponding guideline range
below that otherwise dictated by the sentencing guidelines, and to
recommend a term of imprisonment within this reduced range.

       e.    Recommend that defendant be sentenced to a term of
imprisonment no higher than the low end of the applicable Sentencing
Guidelines range, provided that the offense level used by the Court
to determine that range is 23 or higher prior to any departure
downward in offense level pursuant to U.S.S.G. § 5K1.1 and provided
that the Court does not depart downward in criminal history category.

or offense level except to the extent requested by the USAO pursuant to U.S.S.G. § 5K1.1. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

7.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the USAO or any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants a USAO motion but elects to sentence above the reduced range.

d.   At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

1     e.   The USAO's determination whether defendant has
2  provided substantial assistance will not depend in any way on whether
3  the government prevails at any trial or court hearing in which
4  defendant testifies or in which the government otherwise presents
5  information resulting from defendant's cooperation.

6                        NATURE OF THE OFFENSE

7     8.   Defendant understands that for defendant to be guilty of
8  the crime charged in count thirteen, that is, health care fraud, in
9  violation of Title 18, United States Code, Section 1347, the
10  following must be true:

11     (1) Defendant knowingly and willfully executed, or attempted to
12  execute, a scheme or plan to defraud a health care benefit program,
13  or a scheme or plan for obtaining money or property from a health
14  care benefit program by means of false or fraudulent pretenses,
15  representations, or promises;

16     (2) Statements made or facts omitted as part of the scheme were
17  material, that is, they had a natural tendency to influence, or were
18  capable of influencing, the health care benefit program to part with
19  money or property;

20     (3) Defendant acted with the intent to defraud, that is, the
21  intent to deceive or cheat; and

22     (4) The scheme involved the delivery of or payment for health
23  care benefits, items, or services.

24     The word "willfully" means that defendant committed the act
25  voluntarily and purposely, and with knowledge that her conduct was,
26  in a general sense, unlawful.  That is, defendant must have acted
27  with a bad purpose to disobey or disregard the law.  The government
28  need not prove that the defendant was aware of the specific provision

                                7

1   of the law that she is charged with violating or any other specific
2   provision.

3        The term "health care benefit program" means any public or
4   private plan or contract, affecting commerce, under which any medical
5   benefit, item, or service is provided to any individual, and includes
6   any individual or entity who is providing a medical benefit, item, or
7   service for which payment may be made under the plan or contract.
8   For purposes of this case, it includes the Medicare and Medi-Cal
9   programs.

10                      PENALTIES AND RESTITUTION

11       9.   Defendant understands that the statutory maximum sentence
12  that the Court can impose for a violation of Title 18, United States
13  Code, Section 1347, is: 10 years imprisonment; a three-year period of
14  supervised release; a fine of $250,000 or twice the gross gain or
15  gross loss resulting from the offense, whichever is greatest; and a
16  mandatory special assessment of $100.

17       10.  Defendant understands that defendant will be required to
18  pay full restitution to the victims of the offenses to which
19  defendant is pleading guilty.  Defendant agrees that, in return for
20  the USAO's compliance with its obligations under this agreement, the
21  Court may order restitution to persons other than the victims of the
22  offense to which defendant is pleading guilty and in an amount
23  greater than the amount alleged in the count to which defendant is
24  pleading guilty.  In particular, defendant agrees that the Court may
25  order restitution to any victim for any losses suffered by that
26  victim as a result of: (a) any relevant conduct, as defined in
27  U.S.S.G. § 1B1.3, in connection with the offenses to which defendant
28  is pleading guilty; and (b) any dismissed counts pursuant to this

agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution owed to the Medicare and Medi-Cal programs is approximately $5,464,568 and $1,968,761, respectively, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case, suspension or revocation of a professional license, and mandatory exclusion from federal health care benefit programs for a minimum of five years.

1   Defendant understands that unanticipated collateral consequences will

2   not serve as grounds to withdraw defendant's guilty plea.

3       13.   Defendant understands that, if defendant is not a United

4   States citizen, the felony conviction in this case may subject

5   defendant to: removal, also known as deportation, which may, under

6   some circumstances, be mandatory; denial of citizenship; and denial

7   of admission to the United States in the future.  The court cannot,

8   and defendant's attorney also may not be able to, advise defendant

9   fully regarding the immigration consequences of the felony conviction

10  in this case.  Defendant understands that unexpected immigration

11  consequences will not serve as grounds to withdraw defendant's guilty

12  plea.

13                          FACTUAL BASIS

14      14.   Defendant admits that defendant is, in fact, guilty of the

15  offense to which defendant is agreeing to plead guilty.  Defendant

16  and the USAO agree to the statement of facts provided below and agree

17  that this statement of facts is sufficient to support a plea of

18  guilty to the charge described in this agreement and to establish the

19  Sentencing Guidelines factors set forth in paragraphs 16 and 17 below

20  but is not meant to be a complete recitation of all facts relevant to

21  the underlying criminal conduct or all facts known to either party

22  that relate to that conduct.

23      Background

24      At all times relevant to this plea agreement, the Medicare and

25  Medi-Cal programs were health care benefit programs as defined by 18

26  U.S.C. § 24(b).  Individuals receiving Medicare or Medi-Cal benefits

27  were known as beneficiaries.

28

                              10

1        To qualify for reimbursement for hospice services, Medicare and

2  Medi-Cal required a physician to certify that a beneficiary was

3  terminally ill.  Medicare and Medi-Cal considered a beneficiary to be

4  "terminally ill" if the beneficiary's life expectancy was six months

5  or less if the illness ran its normal course.  Hospice services

6  reimbursed by Medicare and Medi-Cal were palliative in nature and

7  included, but were not limited to, medications to manage pain

8  symptoms, necessary medical equipment, and bereavement services to

9  surviving family members.

10        Medicare covered hospice services for those beneficiaries who

11  were eligible for Medicare Part A (hospital-related services).  When

12  a Medicare beneficiary elected hospice coverage, the beneficiary

13  waived all rights to Medicare Part B (covering outpatient physician

14  services and procedures) coverage of services to treat or reverse the

15  beneficiary's terminal illness while the beneficiary was on hospice.

16      <u>The Scheme to Defraud</u>

17        Beginning in or about November 2007, and continuing through in

18  or about June 2013, in Los Angeles County, within the Central

19  District of California, and elsewhere, defendant and other co-

20  schemers, including defendant's mother, Priscilla Villabroza

21  ("Villabroza"), Sri Wijegoonaratna, M.D. ("Wijegoonaratna"), Boyao

22  Huang ("Huang"), M.D., Nancy Briones, R.N. ("Briones"), and Roseilyn

23  Montana ("Montana") knowingly, willfully, and with intent to defraud,

24  executed a scheme (a) to defraud health care benefit programs,

25  namely, Medicare and Medi-Cal, as to material matters in connection

26  with the delivery of and payment for health care benefits, items, and

27  services; and (b) to obtain money from Medicare and Medi-Cal by means

28  of material false and fraudulent pretenses and representations and

1  the concealment of material facts in connection with the delivery of
2  and payment for health care benefits, items, and services.
3      The fraudulent scheme operated, in substance, in the following
4  manner:
5      Efforts to Conceal Co-Schemer Villabroza's Interest in
6      California Hospice
7      On or about August 15, 2007, federal agents conducted a search
8  of Medcare Plus Home Health Providers, Inc. ("Medcare Plus"), a home
9  health agency owned and operated by Villabroza.  Thereafter,
10 Villabroza learned that she was under investigation for health care
11 fraud and the payment of illegal kickbacks in exchange for the
12 referral of beneficiaries to MedCare Plus.
13     On or about November 29, 2007, Villabroza purchased California
14 Hospice LLP ("California Hospice") for approximately $300,000.  To
15 conceal her ownership interest in California Hospice, Villabroza
16 designated defendant and co-schemer Erwin Castillo ("Castillo"),
17 employed as the director of nursing of California Hospice, as the co-
18 owners of California Hospice on documents filed with the State of
19 California, Medicare, Medi-Cal, and the Internal Revenue Service.
20 Defendant submitted an application with Medicare to transfer
21 California Hospice's provider number following the sale.
22     Defendant and Villabroza owned and operated California Hospice.
23 Defendant and Villabroza were the only signatories on, and jointly
24 controlled, California Hospice's bank account at Wells Fargo Bank
25 ending in 1910 (the "Wells Fargo Account"), which defendant and
26 Villabroza opened on or about January 28, 2008.
27     On or about May 13, 2008, defendant and Villabroza submitted a
28 Medicare provider application for California Hospice.  Defendant

1  signed the application under penalty of perjury, knowing the
2  application was false because Villabroza's ownership interest in
3  California Hospice was not disclosed to Medicare as required by the
4  application.

5      On or about August 19, 2008, Villabroza pled guilty to
6  participating in a scheme to defraud Medi-Cal operated out of Medcare
7  Plus, in violation of 18 U.S.C. section 1347, in United States v.
8  Villabroza, Case No. CR 08-782-GAF (Central District of California).

9      On or about April 16, 2009, defendant, with Villabroza's
10 knowledge, submitted a provider application to Medi-Cal, which
11 defendant signed under penalty of perjury, falsely certifying that no
12 owner, officer, director, employee or agent of California Hospice had
13 been convicted of an offense involving fraud on a government program
14 within the previous 10 years.  As defendant then well knew, the
15 certification was false because Villabroza was an owner, employee,
16 and agent of California Hospice and had been convicted of health care
17 fraud in Case No. 08-782-GAF.  As a result of concealing
18 Villabroza's interest in California Hospice in this manner, defendant
19 furthered the scheme to engage in health care fraud, for had
20 Villabroza's true interest in California Hospice been disclosed,
21 California Hospice would not have received a Medi-Cal provider number
22 and would not have been able to bill Medi-Cal fraudulently for health
23 care services.

24     On or about July 24, 2011, in connection with Villabroza's
25 sentencing in Case No. CR 08-782-GAF, and in furtherance of the
26 scheme to defraud, defendant submitted a letter to the United States
27 District Court falsely stating that Villabroza "has no ownership
28 interest, nor exercises any influence or control over California

1   Hospice Care, LLC" and that "Villabroza has never had ownership of
2   California Hospice Care, LLC."  As defendant and Villabroza then well
3   knew at the time defendant submitted her letter to the Court on
4   behalf of Villabroza, this statement was false because Villabroza was
5   an owner of California Hospice and controlled the Wells Fargo
6   Account.  While Villabroza was serving her sentence in Case No. CR
7   08-782-GAF, Villabroza continued to manage the operations of
8   California Hospice, including through directions given during
9   meetings with defendant and Castillo.

10        Recruitment of Beneficiaries and Fraudulent Hospice Admissions
11        California Hospice received few, if any, referrals from the
12   primary care physicians of beneficiaries.  Rather, defendant and
13   Villabroza paid patient recruiters, known as "marketers" or
14   "cappers," to recruit Medicare and Medi-Cal beneficiaries to
15   California Hospice.  Using the proceeds of the payments received by
16   California Hospice from Medicare and Medi-Cal and deposited into the
17   Wells Fargo Account, defendant and Villabroza paid the marketers,
18   including Montana, approximately $400 to $1,000 in illegal kickbacks
19   in exchange for each recruited beneficiary per month the recruited
20   beneficiary purportedly received hospice-related services from
21   California Hospice.  As defendant and other co-schemers then well
22   knew, the recruited beneficiaries were not terminally ill and did not
23   need hospice services.

24        Defendant and Villabroza referred to marketers as "business
25   liaisons," "community liaisons," and "business development
26   representatives" to disguise the illegal nature of their illegal
27   kickback relationship with their marketers.  Defendant also paid
28   medical professionals, including Wijegoonratna and Briones, illegal

14

kickbacks for referring beneficiaries to California Hospice so the beneficiaries would be admitted to hospice.

Defendant knew that Wijegoonaratna, Huang, and other physicians paid by California Hospice falsely certified that beneficiaries were terminally ill, when, as defendant and Villabroza then well knew, the overwhelming majority of the recruited California Hospice beneficiaries were not terminally ill.

Once a falsely certified beneficiary was admitted to hospice, defendant and Villabroza caused California Hospice to fraudulently bill Medicare and Medi-Cal for purportedly providing unnecessary hospice-related services to that beneficiary.

On a number of occasions, in response to California Hospice's high volume of claims, a Medicare contractor sent California Hospice Additional Development Requests ("ADRs"), which sought documentation to support claims for hospice-related services.  The ADRs were sent after Medicare had denied claims because it determined that there was insufficient documentation to support findings that the patients were terminally ill.  Thereafter, to support the fraudulent diagnoses of terminal illnesses by Wijegoonaratna and Huang, and to secure payment from Medicare, with defendant's knowledge and consent, co-schemer Castillo directed quality assurance nurses employed by California Hospice, to create and thereafter submit false and fraudulent medical records for California Hospice patients, including altering nursing notes in response to ADRs to make it appear that the patients were terminally ill, knowing that the records would be submitted to the Medicare contractor in response to the ADR audits.

//

15

1    <u>The False Claim Charged In Count 13</u>

2        On or about December 5, 2012, in furtherance of, and as an

3    execution of, the scheme to defraud Medicare and Medi-Cal, defendant

4    caused the submission of claim number 21234001049407 for $6,582.70 to

5    Medicare for the provision of hospice services to beneficiary S.F.

6    In fact, and as defendant then well knew: (a) this claim was false

7    and fraudulent because beneficiary S.F. was not terminally ill; and

8    (b) the submission of this false and fraudulent claim was unlawful.

9    Medicare paid this claim.  Defendant and the USAO agree that the

10   offense in count thirteen to which defendant is pleading guilty

11   involved a loss to the victim, Medicare, of $5,432.57.

12       <u>Relevant Conduct Loss</u>

13       For purposes of sentencing, the intended loss based on relevant

14   conduct was approximately $8,910,702, which is the total amount of

15   the fraudulent claims defendant submitted and caused to be submitted

16   to Medicare and Medi-Cal for medically unnecessary hospice-related

17   services purportedly provided by California Hospice.  Between in or

18   about March 2009 and in or about June 2013, defendant submitted and

19   caused to be submitted false and fraudulent claims to Medicare and

20   Medi-Cal for hospice-related services in the amounts of approximately

21   $6,861,346 and $2,049,356, respectively.  Based on these claims,

22   Medicare and Medi-Cal paid California Hospice approximately

23   $5,464,568 and $1,968,761, respectively.  Payment on these false and

24   fraudulent claims was made electronically to the Wells Fargo Account.

25                          SENTENCING FACTORS

26       15.  Defendant understands that in determining defendant's

27   sentence the Court is required to calculate the applicable Sentencing

28   Guidelines range and to consider that range, possible departures

                                    16

under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

16. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors for the offense to which defendant is pleading guilty:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Loss Amount of $7-$20 Million | +20 | [U.S.S.G.§ 2B1.1(b)(1)(K)] |
| Fraud on a Government Health Care Program More Than $7 Million | +3 | [U.S.S.G. § 2B1.1(b)(7)(ii)] |
| Obstruction of Justice | +2 | [U.S.S.G. § 3C1.1] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1(b)] |
| **Total Offense Level:** | 28 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 5(d) are met. Subject to paragraph 30 below, defendant and the USAO agree not to seek or argue in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing

17

this agreement but prior to sentencing, defendant were to commit an
act, or the USAO were to discover a previously undiscovered act
committed by defendant prior to signing this agreement, which act, in
the judgment of the USAO, constituted obstruction of justice within
the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the
enhancement set forth in that section.

17.   On April 19, 2015, the Sentencing Commission approved
amendments to the Sentencing Guidelines that will go into effect on
November 1, 2015, unless modified or disapproved by Act of Congress.
If defendant's sentencing were governed by those amendments,
defendant and the USAO agree, subject to all the additional
provisions in paragraph 16 above, that the applicable Sentencing
Guidelines factors would be as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Loss Amount of $3.5-$9.5 Million | +18 | [U.S.S.G.§ 2B1.1(b)(1)(J)] |
| Fraud on a Government Health Care Program More Than $7 Million | +3 | [U.S.S.G. § 2B1.1(b)(7)(ii)] |
| Obstruction of Justice | +2 | [U.S.S.G. § 3C1.1] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1(b)] |
| Total Offense Level: | 26 | |

18.   Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

19.   Provided that defendant complies with her obligations under
paragraphs 2 and 3, the USAO agrees to recommend, pursuant to the
factors set forth in 18 U.S.C. § 3553(a), a downward variance not to
exceed the equivalent of three levels in defendant's offense level

1   based on defendant's role as the caregiver for her child with

2   cerebral palsy.  Defendant reserves the right to argue for a sentence

3   outside the sentencing range established by the Sentencing Guidelines

4   based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2),

5   (a)(3), (a)(6), and (a)(7).

6                    WAIVER OF CONSTITUTIONAL RIGHTS

7        20.  Defendant understands that by pleading guilty, defendant

8   gives up the following rights:

9             a.   The right to persist in a plea of not guilty.

10            b.   The right to a speedy and public trial by jury.

11            c.   The right to be represented by counsel – and if

12   necessary have the court appoint counsel - at trial.  Defendant

13   understands, however, that, defendant retains the right to be

14   represented by counsel – and if necessary have the court appoint

15   counsel – at every other stage of the proceeding.

16            d.   The right to be presumed innocent and to have the

17   burden of proof placed on the government to prove defendant guilty

18   beyond a reasonable doubt.

19            e.   The right to confront and cross-examine witnesses

20   against defendant.

21            f.   The right to testify and to present evidence in

22   opposition to the charges, including the right to compel the

23   attendance of witnesses to testify.

24            g.   The right not to be compelled to testify, and, if

25   defendant chose not to testify or present evidence, to have that

26   choice not be used against defendant.

27

28

                              19

1        h.    Any and all rights to pursue any affirmative defenses,

2   Fourth Amendment or Fifth Amendment claims, and other pretrial

3   motions that have been filed or could be filed.

4                   WAIVER OF APPEAL OF CONVICTION

5        21.  Defendant understands that, with the exception of an appeal

6   based on a claim that defendant's guilty plea was involuntary, by

7   pleading guilty defendant is waiving and giving up any right to

8   appeal defendant's conviction on the offense to which defendant is

9   pleading guilty.

10               LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

11       22.  Defendant agrees that, provided the Court imposes a total

12  term of imprisonment on all counts of conviction of no more than 46

13  months, defendant gives up the right to appeal all of the following:

14  (a) the procedures and calculations used to determine and impose any

15  portion of the sentence; (b) the term of imprisonment imposed by the

16  Court; (c) the fine imposed by the court, provided it is within the

17  statutory maximum; (d) the amount and terms of any restitution order,

18  provided it requires payment of no more than $7,433,329; (e) the term

19  of probation or supervised release imposed by the Court, provided it

20  is within the statutory maximum; and (f) any of the following

21  conditions of probation or supervised release imposed by the Court:

22  the conditions set forth in General Orders 318, 01-05, and/or 05-02

23  of this Court; and the drug testing conditions mandated by 18 U.S.C.

24  §§ 3563(a)(5) and 3583(d).

25       23.  The USAO agrees that, provided (a) all portions of the

26  sentence are at or below the statutory maximum specified above and

27  (b) the Court imposes a term of imprisonment of no less than 46

28  months, the USAO gives up its right to appeal any portion of the

1 sentence, with the exception that the USAO reserves the right to

2 appeal the amount of restitution ordered if that amount is less than

3 $7,433,329.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

5     24. Defendant agrees that if, after entering guilty pleas

6 pursuant to this agreement, defendant seeks to withdraw and succeeds

7 in withdrawing defendant's guilty pleas on any basis other than a

8 claim and finding that entry into this plea agreement was

9 involuntary, then: (a) the USAO will be relieved of all of its

10 obligations under this agreement, including in particular its

11 obligations regarding the use of Cooperation Information; (b) in any

12 investigation, criminal prosecution, or civil, administrative, or

13 regulatory action, any Cooperation Information and any evidence

14 derived from any Cooperation Information shall be admissible against

15 defendant, and defendant will not assert, and hereby waives and gives

16 up, any claim under the United States Constitution, any statute, or

17 any federal rule, that any Cooperation Information or any evidence

18 derived from any Cooperation Information should be suppressed or is

19 inadmissible; and (c) should the USAO choose to pursue any charge

20 that was either dismissed or not filed as a result of this agreement,

21 then (i) any applicable statute of limitations will be tolled between

22 the date of defendant's signing of this agreement and the filing

23 commencing any such action; and (ii) defendant waives and gives up

24 all defenses based on the statute of limitations, any claim of pre-

25 indictment delay, or any speedy trial claim with respect to any such

26 action, except to the extent that such defenses existed as of the

27 date of defendant's signing this agreement.

28

1                      EFFECTIVE DATE OF AGREEMENT

2        25.   This agreement is effective upon signature and execution of

3   all required certifications by defendant, defendant's counsel, and an

4   Assistant United States Attorney.

5                        BREACH OF AGREEMENT

6        26.   Defendant agrees that if defendant, at any time after the

7   signature of this agreement and execution of all required

8   certifications by defendant, defendant's counsel, and an Assistant

9   United States Attorney, knowingly violates or fails to perform any of

10  defendant's obligations under this agreement ("a breach"), the USAO

11  may declare this agreement breached.   For example, if defendant

12  knowingly, in an interview, before a grand jury, or at trial, falsely

13  accuses another person of criminal conduct or falsely minimizes

14  defendant's own role, or the role of another, in criminal conduct,

15  defendant will have breached this agreement.   All of defendant's

16  obligations are material, a single breach of this agreement is

17  sufficient for the USAO to declare a breach, and defendant shall not

18  be deemed to have cured a breach without the express agreement of the

19  USAO in writing.   If the USAO declares this agreement breached, and

20  the Court finds such a breach to have occurred, then:

21        a.    If defendant has previously entered a guilty plea

22  pursuant to this agreement, defendant will not be able to withdraw

23  the guilty plea.

24        b.    The USAO will be relieved of all its obligations under

25  this agreement; in particular, the USAO: (i) will no longer be bound

26  by any agreements concerning sentencing and will be free to seek any

27  sentence up to the statutory maximum for the crime to which defendant

28  has pleaded guilty; (ii) will no longer be bound by any agreements

                                   22

1   regarding criminal prosecution, and will be free to criminally

2   prosecute defendant for any crime, including charges that the USAO

3   would otherwise have been obligated to dismiss pursuant to this

4   agreement; and (iii) will no longer be bound by any agreement

5   regarding the use of Cooperation Information and will be free to use

6   any Cooperation Information in any way in any investigation, criminal

7   prosecution, or civil, administrative, or regulatory action.

8          c.   The USAO will be free to criminally prosecute

9   defendant for false statement, obstruction of justice, and perjury

10  based on any knowingly false or misleading statement by defendant.

11         d.   In any investigation, criminal prosecution, or civil,

12  administrative, or regulatory action: (i) defendant will not assert,

13  and hereby waives and gives up, any claim that any Cooperation

14  Information was obtained in violation of the Fifth Amendment

15  privilege against compelled self-incrimination; and (ii) defendant

16  agrees that any Cooperation Information and any Plea Information, as

17  well as any evidence derived from any Cooperation Information or any

18  Plea Information, shall be admissible against defendant, and

19  defendant will not assert, and hereby waives and gives up, any claim

20  under the United States Constitution, any statute, Rule 410 of the

21  Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

22  Criminal Procedure, or any other federal rule, that any Cooperation

23  Information, any Plea Information, or any evidence derived from any

24  Cooperation Information or any Plea Information should be suppressed

25  or is inadmissible.

26      27.  Following the Court's finding of a knowing breach of this

27  agreement by defendant, should the USAO choose to pursue any charge

28  that was either dismissed or not filed as a result of this agreement,

1   then: Defendant agrees that any applicable statute of limitations is
2   tolled between the date of defendant's signing of this agreement and
3   the filing commencing any such action.  Defendant waives and gives up
4   all defenses based on the statute of limitations, any claim of pre-
5   indictment delay, or any speedy trial claim with respect to any such
6   action, except to the extent that such defenses existed as of the
7   date of defendant's signing this agreement.

8                  COURT AND PROBATION OFFICE NOT PARTIES

9        28.  Defendant understands that the Court and the United States
10  Probation Office are not parties to this agreement and need not
11  accept any of the USAO's sentencing recommendations or the parties'
12  agreements to facts or sentencing factors.

13       29.  Defendant understands that both defendant and the USAO are
14  free to: (a) supplement the facts by supplying relevant information
15  to the United States Probation Office and the Court, (b) correct any
16  and all factual misstatements relating to the Court's Sentencing
17  Guidelines calculations and determination of sentence, and (c) argue
18  on appeal and collateral review that the Court's Sentencing
19  Guidelines calculations and the sentence it chooses to impose are not
20  error, although each party agrees to maintain its view that the
21  calculations in paragraphs 16 and 17 are consistent with the facts of
22  this case.  While this paragraph permits both the USAO and defendant
23  to submit full and complete factual information to the United States
24  Probation Office and the Court, even if that factual information may
25  be viewed as inconsistent with the facts agreed to in this agreement,
26  this paragraph does not affect defendant's and the USAO's obligations
27  not to contest the facts agreed to in this agreement.

28

30.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

31.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

32. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

EILEEN M. DECKER
United States Attorney

_Steven M. Arkow_                          9/24/15
STEVEN M. ARKOW                            Date
Assistant United States Attorney

_Sharon Patrow_                            9-23-15
SHARON PATROW                              Date
Defendant

_Michael D. Nasatir / Vicki Podberesky_   9/23/15
MICHAEL D. NASATIR                         Date
Attorney for Defendant
SHARON PATROW

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those

1  contained in this agreement.  No one has threatened or forced me in
2  any way to enter into this agreement.  I am satisfied with the
3  representation of my attorney in this matter, and I am pleading
4  guilty because I am guilty of the charge and wish to take advantage
5  of the promises set forth in this agreement, and not for any other
6  reason.

7  _____                    9-23-15
8  SHARON PATROW                                       Date
   Defendant
9

10              CERTIFICATION OF DEFENDANT'S ATTORNEY

11      I am SHARON PATROW's attorney.  I have carefully and thoroughly
12  discussed every part of this agreement with my client.  Further, I
13  have fully advised my client of his rights, of possible pretrial
14  motions that might be filed, of possible defenses that might be
15  asserted either prior to or at trial, of the sentencing factors set
16  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
17  provisions, and of the consequences of entering into this agreement.
18  To my knowledge: no promises, inducements, or representations of any
19  kind have been made to my client other than those contained in this
20  agreement; no one has threatened or forced my client in any way to
21  enter into this agreement; my client's decision to enter into this
22  agreement is an informed and voluntary one; and the factual basis set
23  forth in this agreement is sufficient to support my client's entry of
24  a guilty plea pursuant to this agreement.

25  _____                    9/23/15
26  MICHAEL D. NASATIR / VICKI Podberesky       Date
   Attorney for Defendant
27  SHARON PATROW

28

                              27